**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

```
-----------------------------------------------------------------X
                                              :
PATRICK COLLINS, INC.,                        :
                                              :        Civil Action No. 11-cv-07252-MSG
            Plaintiff,                        :
                                              :
                vs.                           :
                                              :
JOHN DOES 1-18,                               :
                                              :
                   Defendants.                :
                                              :
-----------------------------------------------------------------X
```

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO JOHN DOE 13'S MOTION TO
SEVER DEFENDANTS FOR IMPROPER JOINDER AND TO VACATE THE ORDER
GRANTING LEAVE TO SERVE THIRD-PARTY SUBPOENAS AND QUASH THE
<u>SUBPOENA</u>**

# TABLE OF CONTENTS

I.      Introduction ................................................................................................................ 5
II.     Joinder Is Proper ...................................................................................................... 7
   A.      Facts ...................................................................................................................... 7
      1.   Absent Joinder, Data Retention Issues Will Cause Plaintiff To Sue John Does That
           Cannot Be Identified ......................................................................................... 7
      2.   Joinder is Required By Rule 1's Instruction to Judges to Construe The Rules to
           Secure the Inexpensive Determination of Every Action ................................... 7

   B.      Legal Argument ................................................................................................... 8
      1.   The Logical Relationship Test ........................................................................... 9
      2.   The Way BitTorrent Works, Infringers Continue To Distribute Files Indefinitely ...... 9
      3.   Same Swarm BitTorrent Infringement is Logically Related ............................ 10
      4.   Doe Defendants Distributed The Same Exact Torrent File As Evidenced By A
           Cryptographic Alphanumeric Hash Value ........................................................ 11
      5.   The District of Columbia Correctly Supports Joinder In BitTorrent Cases ............... 12
      6.   Joinder is Proper Because the Defendants' Infringement Was Part of a Series of
           Transactions ...................................................................................................... 13
      i.   Here, Plaintiff Properly Pled a Series of Transactions ................................. 13
      7.   There Are Common Issues of Fact and Law ................................................... 14
      8.   Joinder Promotes Judicial Efficiency and is Beneficial to Putative Defendant and Doe
           Defendants Cannot Demonstrate Prejudice At This Stage ............................... 15
      9.   Disallowing Joinder Would Effectively Prevent Plaintiff From Being Able to Enforce
           Its Copyrights and Would Be Inconsistent With Rule 1 ................................. 15
     10.   District Courts From the Around the Country Permit Joinder .......................... 16
      i.   The District Court of Colorado Permits Joinder .............................................. 16
     ii.   California District Courts Permit Joinder ........................................................ 16
    iii.   The Northern District of Illinois Permits Joinder ........................................... 17
     iv.   New York Permits Joinder ............................................................................... 18
      v.   Maryland Federal Courts Permit Joinder ........................................................ 18
     vi.   New Jersey, North Carolina, and Florida Permit Joinder ............................... 18
     11.   Joinder is Also Proper Because Plaintiff Pled That Each of the Defendants Is
           Contributorily Liable For Each Other Defendant's Infringement ............................. 19
     12.   Contributory Infringement is a Jury Question ................................................. 20
     13.   Plaintiff Intends to Call Several of the Defendants To Prove Contributory
           Infringement vis-à-vis the other Defendants .................................................... 20

III.    This Court Should Not Quash The Subpoena ........................................................ 21
   A.      The Subpoena was Issued Properly and Defendant Lacks Standing ......................... 21
   B.      An IP Address is the Only Way to Identify the Infringer ............................................ 21
   C.      The Doe Defendant's IP Addresses Were Undoubtedly Used to Distribute Plaintiff's
           Copyrighted Movie ........................................................................................... 23

IV.     This Court Should Not Issue A Protective Order .................................................. 24
V.      Conclusion .............................................................................................................. 25

## **TABLE OF AUTHORITIES**

Adobe Systems, Inc. v. Canus Productions, Inc., 173 F. Supp.2d 1044, 1055 (C.D. Cal. 2001). 20

AF Holdings, LLC v. Does 1-162, Case No. 11-23036, (S.D. Fl Feb. 14, 2012)........................ 19

Berlin Media Art E.K. v. Does 1-144, 2011 WL 4056167 (E.D. CA. 2011) ............................... 16

Bridgeport Music, inc. v. Diamond Time, Ltd., 371 F.3d 883 (6th Cir. 2004) ............................ 20

Call of the Wild v. Does 1-1062, 770 F.Supp.2d 332 (D.D.C. 2011)................................... 13, 15

Call of the Wild v. Does 1-331, 274 F.R.D. 334 (D.D.C. 2011) ................................................ 12

Call of the Wild, 770 F.Supp.2d at 343 ..................................................................................... 14

Camelot Distribution Group v. Does 1-1210, 2011 WL 4455249, *3 (E.D.Cal. 2011) .............. 16

Costar Group, Inc. v. Loopnet, Inc., 164 F. Supp.2d 688, 696 (M.D. 2001)............................. 19

DigiProtect USA Corp. v. Does, 2011 WL 4444666 (S.D.N.Y. 2011) ...................................... 18

Digital Sin, Inc. v. Does 1-176, 12-CV-00126 AJN, 2012 WL 263491 (S.D.N.Y. Jan. 30, 2012)
........................................................................................................................................ 18

Doe v. Megless, 654 F.3d 404, 408 (3d Cir. 2011) ..................................................................... 24

Donkeyball Movie, LLC v. Does 1-171, 2011 WL 1807452 (D.D.C. 2011) ............................... 13

Erickson v. Pardus, 551 U.S. 89, 93 (2007)............................................................................... 13

erty Media Holdings, LLC v. Swarm of November 16, 2010, 2011 WL 1597495, *4 (S.D.Cal.
        2011) .................................................................................................................................. 22

First Time Videos, LLC v. Does 1-500, --- F.Supp.2d ----, 2011 WL 3498227 (N.D.Ill.,2011) . 17

First Time Videos, LLC v. Does 1-76  --- F.R.D. ----, 2011 WL 3586245 (N.D.Ill.,2011)......... 17

Hard Drive Productions, Inc. v. Does 1–46, 2011 U.S. Dist. LEXIS 67314 (N.D. Cal. 2011).... 17

Hard Drive v. Does 1-55, 2011 WL 4889094, (N.D.Ill 2011)...................................................... 17

K-Beech Inc. v. John Does 1-22, 2011 WL 60000768 (D. Md. 2011)........................................ 18

K-Beech Inc., v. John Does 1-57, Case 2:11-cv-00358-CEH-SPC,  at*12 (M.D. Fl. 2011)............
........................................................................................................................... 14, 15, 19

K-Beech v. John Does 1-39, et. al., 11-cv-04776 (D. NJ Jan.6, 2012)........................................ 19

K-Beech, Inc. v. Does 1-29,  2011 WL 5966337 (W.D.N.C. Nov. 28, 2011)............................. 19

K-Beech, Inc. v. John Does 1 – 78, 5:11-cv-05060-BMD (E.D. Pa 2011) .................................. 6

Liberty Media Holdings, LLC v. Swarm of November 16, 2010, 2011 WL 1597495 (S. D. Cal.
        2011) ................................................................................................................................. 17

Liberty Media Holdings, LLC v. Swarm Sharing Hash File, 2011 WL 5161453 (D. Mass. Oct.
        31, 2011) ............................................................................................................................ 25

Marobie-FL, Inc. v. National Ass'n of Fire Equipment Distributors, 983 F. Supp. 1167 (N.D. IL
        1997) .................................................................................................................................. 20

Maverick Entertainment Group, Inc. v. Does 1-2115, 2011 WL 1807428 (D.D.C. 2011) .......... 12

MGCIP v. Does 1-316, 2011 WL 2292958 (N.D. Ill. 2011) ...................................................... 17

Moore v. New York Cotton Exchange, 270 U.S. 593, 610, 46 S.Ct. 367, 371(1926)................... 9

New Life Homecare, Inc. v. Blue Cross Ne. Pennsylvania, 3:06-CV-2485, 2012 WL 580198
        (M.D. Pa. Feb. 22, 2012) ................................................................................................... 21

New Sensations, Inc. v. Does 1-1,474, 2011 WL 4407222, (N.D.Cal. 2011) .............................. 17

New Sensations, Inc. v. Does 1745, 2011 WL 2837610 (N.D. Cal. 2011) ................................ 17

NuImage, Inc. v. Does 1-22,322, 2011 WL 3240562 (D.D.C. 2011)........................................... 12

Pacific Century Intern v. Does 1-48, 2011 WL 4725243 (N.D. Cal. 2011) ................................ 17

Patrick Collins Inc. v. Does 1-11, 2011 WL 5439045 (D. Md. 2011)........................................ 18

Patrick Collins Inc. v. Does 1-22, 2011 WL 5439005 (D. Md. 2011)........................................ 18

Patrick Collins v. Does 1-2590, 2011 WL 4407172 (N.D. Cal. 2011)................................... 9, 16

Patrick Collins v. John Does 1-9, 11-cv-01269 (S.D.N.Y. 2011)............................................... 18

Patrick Collins, Inc. v. Does 1-43, 11-CV-4203-FSH (D. NJ. Jan. 6, 2012)................................ 5

Patrick Collins, Inc. v. John Does 1-33, 2012 WL 415424 (D. Colo. 2012).............................. 16

Patrick Collins, Inc., v. John Does 1-21, 2:11-cv-05173-BMS, Order at Dkt. # 17 (E.D. Pa 2011)
................................................................................................................................................ 5

Sony v. Tennenbaum, 2011 WL 4133920 at *11 (1st Cir. 2011)................................................ 23

Third Degree Films v. Does 1-118, 2011 WL 6837774 (D. Md. 2011) ..................................... 18

Transamerica Occidental Life Ins. Co. v. Aviation Office of Am., Inc., 292 F.3d 384, 389-90 (3d
Cir. 2002) ................................................................................................................................ 9

United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 724 (1966)............................................... 8

United States v. Serubo, 460 F. Supp. 689, 694 (E.D. Pa. 1978) ............................................... 13

Voltage Pictures, LLC v. Does 1-5000, 79 Fed.R.Serv.3d 891 (D.D.C. 2011).......................... 12

Voltage Pictures, LLC v. Vazquez, 2011 WL 5006942 (D.D.C. 2011) ...................................... 12

West Coast Productions, Inc. v. Does 1-5829, 275 F.R.D. 9 (D.D.C. 2011)............................... 12

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO JOHN DOE 13'S MOTION TO SEVER DEFENDANTS FOR IMPROPER JOINDER AND TO VACATE THE ORDER GRANTING LEAVE TO SERVE THIRD-PARTY SUBPOENAS AND QUASH THE SUBPOENA**

## I.      INTRODUCTION

Defendant creates a fictional picture of Plaintiff's purpose in an effort to distract the Court from the serious copyright infringement claim brought by Plaintiff.   In doing so, Defendant cites numerous unrelated cases involving different plaintiffs, counsel, and separate fact patterns to support his contention.   Courts in the Third Circuit have held in favor of similar plaintiffs in BitTorrent copyright infringement actions.   See Patrick Collins, Inc. v. Does 1-43, 11-CV-4203-FSH (D. NJ. Jan. 6, 2012) (Exh. A) ("the Court finds joinder in this action is proper and declines to sever any John Doe Defendant from this action").   Here, at this stage in the proceedings, there is little to be gained from severing the Doe Defendants, but there are certain efficiencies to be had by retaining them in the same suit.

Defendant refers heavily to the unpublished opinion of the Honorable Judge Savage who concluded that severance in a similar BitTorrent infringement action was proper.   While the Honorable Judge Savage has severed defendants in BitTorrent actions, this Court has also allowed similar cases to proceed as joined cases.   The Honorable Judge Schiller has denied a motion similar to Defendant's motion, holding "John Doe's Motion to file motion anonymously, sever defendants for improper joinder, stay the proceedings based on misjoinder, quash subpoena, or, in the alternative, for protective order (document no. 7) is denied."   See Patrick Collins, Inc., v. John Does 1-21, 2:11-cv-05173-BMS, Order at Dkt. # 17 (E.D. Pa 2011). Severance is not necessary, because the law overwhelmingly supports joinder at this stage of the proceeding.   Indeed, the vast majority of judges and courts around the country hold that joinder is proper.

Despite Defendant's contentions, Plaintiff has a proper purpose and intent to litigate. Undersigned has demonstrated this intent through other similar cases in this district. Indeed, after the Honorable Judge Schiller severed K-Beech, Inc. v. John Does 1 – 78, 5:11-cv-05060-BMD (E.D. Pa 2011), plaintiff, through undersigned, individually sued over 35 defendants in this Court. If this Court severs, Plaintiff will likely file individual suits against the majority of the defendants in this case. For obvious reasons, such a process would not be the most economical use of either the litigant's or this U.S. Court system's resources. Indeed, if forced to pursue this route, Plaintiffs would have to prepare 18 individual suits, 18 motions for leave to conduct discovery, 18 declarations in support thereof, etc. Further, this Court would have to issue orders in all those cases and otherwise manage a process that is much more easily managed if the Doe Defendants remained joined in the cases as formulated. While the individual suit process is labor intensive, Plaintiff is committed to doing it again because it simply cannot afford to allow citizens of any state to believe that they can steal its property with impunity. Severance is not necessary, however, because the law overwhelmingly supports joinder at this stage of the proceeding. Indeed, the vast majority of judges and courts around the country hold that joinder is proper.

Notwithstanding Plaintiff's intent to re-file individual suits, throughout this year, in a series of decisions, Courts across the country have developed a rule permitting joinder in BitTorrent cases where, as here, (1) the complaint clearly explains how BitTorrent works through a series of transactions, (2) all of the defendants live in the district (eliminating long-arm issues and venue), (3) all of the defendants were part of the exact same swarm of peer infringers as evidenced by a unique cryptographic hash value, and (4) Plaintiff pled that the Defendants' are contributorily liable for each others' infringement.

## II.   JOINDER IS PROPER

### A.   Facts

#### 1.   Absent Joinder, Data Retention Issues Will Cause Plaintiff To Sue John Does That Cannot Be Identified

Plaintiff has learned through suits across the country that there are major deficiencies associated with many internet service providers' ability to correlate a subscriber to an individual.[1]  Many ISPs delete the data correlating an individual to an IP address after only a few weeks.   According to the FBI, 19% of its ISP lookup requests in one child pornography investigation failed to yield a positive identity.  See FN 1.  Plaintiff's statistics are similar, 10-15% of the identities subpoenaed by Plaintiff in cases nationally fail to identify a person or legal entity.  While most national ISPs are fairly good at retaining data, several other national ISPs and many regional ISPs are very bad at it.  Any decision regarding joinder in a BitTorrent peer-to-peer copyright case simply must take data retention and data failure issues into consideration. Significantly, a rule requiring Plaintiff to sue John Doe defendants on an individual basis creates the substantial risk that the target will not be identified.   Unless the Court system allows Plaintiff to join cases, Plaintiff runs the risk of being unable to identify a significant number of defendants.

#### 2.   Joinder is Required By Rule 1's Instruction to Judges to Construe The Rules to Secure the Inexpensive Determination of Every Action

Fed.R.Civ.P. 1 requires that Courts construe the rules to secure the inexpensive determination of every action.  Fed.R.Civ.P. 20, the joinder rule, has the same purpose.  As

---

[1]  See Statement Of Jason Weinstein Deputy Assistant Attorney General Criminal Division Before The Committee On Judiciary Subcommittee On Crime, Terrorism, And Homeland Security United States House Of Representatives, (January 2011) at http://judiciary.house.gov/hearings/pdf/Weinstein 01252011.pdf

explained below, disallowing joinder is inconsistent with the purpose of both Rules. Indeed, since jurisdiction and venue is proper in this District, if Plaintiff was forced to proceed individually all of these cases would be filed in this District. Plaintiff would have to file notices of related cases. Presumably, this Court would consolidate the cases for purposes of judicial management. Thereafter, at every stage of the process, the litigants and the Court would be faced with additional work. For example, instead of one motion for leave to serve subpoenas in advance of a 26(f) conference, there would be many such identical motions. Instead of one Rule 26(f) conference and report, there would be many such identical Rule 26(f) conferences and reports. Identical pleadings and papers would be repetitively filed. Not only would this needlessly increase the costs for the parties and Court but also for the third party internet service providers.

**B.**     **Legal Argument**

Fed. R. Civ. P. 20(a)(2) states:

Persons . . . may be joined in one action as defendants if:
  (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
  (B) any question of law or fact common to all defendants will arise in the action.

"Under the Federal Rules generally, 'the impulse is toward the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 724 (1966). "Rule 20(a)'s purpose is to 'promote trial convenience and expedite the final determination of disputes, thereby preventing multiple law suits.'" Cooper v. Fitzgerald, 266 F.R.D. 86, 88 (E.D. Pa. 2010). Here, severing Defendants will create multiple totally unnecessary lawsuits.

### 1.    <u>The Logical Relationship Test</u>

Courts across the country employ the "logical relationship" test to ascertain whether joinder is proper under the same transaction or series of transactions test.  According to the rule, a series of transactions may be a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship, and absolute identity of all events is unnecessary.  "'Transaction' is a word of flexible meaning. <u>It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship.</u>"  <u>Moore v. New York Cotton Exchange, 270 U.S. 593, 610, 46 S.Ct. 367, 371(1926)</u> (underlining added).  The Third Circuit has liberally construed the logical relationship test to promote judicial economy.  <u>See</u> <u>Transamerica Occidental Life Ins. Co. v. Aviation Office of Am., Inc.</u>, 292 F.3d 384, 389-90 (3d Cir. 2002).

> The concept of a "logical relationship" has been viewed liberally to promote judicial economy.  Thus, a logical relationship between claims exists where separate trials on each of the claims would "involve a substantial duplication of effort and time by the parties and the courts."  <u>Such a duplication is likely to occur when claims involve the same factual issues, the same factual and legal issues, or are offshoots of the same basic controversy between the parties.</u>

<u>Id</u>. (Internal citations omitted.) (Emphasis added.)   The logical relationship test has been consistently used in decisions concerning BitTorrent copyright infringement in suits across the country.  <u>See e.g.</u> <u>Patrick Collins, Inc. v. John Does 1-2590,</u> 2011WL 4407172, * 6 (N.D. Cal. 2011).

### 2.    <u>The Way BitTorrent Works, Infringers Continue To Distribute Files Indefinitely</u>

The BitTorrent protocol is a distribution system.  All the Defendants were distributing the movie to the other peers in the swarm.  <u>See</u> Plaintiff's Dec. ¶¶20-21.  BitTorrent continues to distribute data for a particular torrent file until the user commands its BitTorrent Client (software

program) to stop distributing it.  Many users never instruct the program to stop distributing data.

According to BitTorrent's own website:

> **Seeding** is where you leave your BitTorrent client open after you've finished your download to help distribute it (you distribute the file *while* downloading, but it's even more helpful if you continue to distribute the full file even after you have finished downloading). Chances are that most of the data you got was from seeds, so help give back to the community! It doesn't require much - <u>BitTorrent will continue seeding until the torrent is removed</u>. [Underlining added.]

See http://www.bittorrent.com/help/guides/beginners-guide.

### 3.      Same Swarm BitTorrent Infringement is Logically Related

The following description of BitTorrent can be found at http://computer.howstuffworks.com/bittorrent2.htm, and describes the series of transactions: BitTorrent is unique insofar as it distributes the burden of sharing files to <u>all</u> users:



**WHAT BITTORENT DOES**

Unlike some other peer-to-peer downloading methods, BitTorrent is a protocol that offloads some of the file tracking work to a central server (called a tracker).   Another difference is that it uses a principal called tit-for-tat.  This means that in order to receive files, you have to give them.  This solves the problem of leeching – one of the developer Bram Cohen's primary goals.  With BitTorrent the more files you share with others, the faster your downloads are  from multiple computers.



What makes the BitTorrent protocol unique is that it distributes [the burden of] the sharing of files to **all** users who have downloaded or are *in the process* of downloading a file. Because BitTorrent breaks up and distributes files in hundreds of small chunks, you don't even need to have downloaded the whole file before you start sharing. As soon as you have even a piece of the file, you can start sharing that piece with other users. That's what makes BitTorrent so fast; your BitTorrent client starts sharing as soon as it downloads one chunk of the file (instead of waiting until the entire download has been completed).  [Parenthetical added, emphasis added.]

See://lifehacker.com/285489/a-beginners-guide-to-bittorrent.   By causing <u>all</u> users to distribute the file, BitTorrent ensures that all peers in a swarm materially aid every other peer.    This critical fact makes BitTorrent different than every other peer-to-peer network and is one of the reasons BitTorrent cases are distinguishable from previous peer-to-peer copyright cases.

### 4.      Doe Defendants Distributed The Same Exact Torrent File As Evidenced By A Cryptographic Alphanumeric Hash Value

As alleged in the Complaint, Plaintiff's movie was processed by a BitTorrent Client (a BitTorrent software program) which generated a torrent file.  The BitTorrent Client divided the movie into hundreds or thousands of digital parts called "pieces."[2]  "Each piece is protected by a cryptographic hash contained in the torrent descriptor."  <u>Id.</u>  The Hash system was created by the National Security Agency.[3]  It is used not only by BitTorrent but by this Court when it sends CM/ECF filing receipts to litigants (the alphanumeric code at the end of the filing receipt is a cryptographic hash.)    "Cryptographic hash functions have many information security applications, notably in digital signatures, message authentication codes (MACs), and other forms of authentication."  <u>See</u> FN 3.  In BitTorrent, "[w]hen another peer later receives a particular piece, the hash of the piece is compared to the recorded hash to test that the piece is

---

[2] <u>See</u> http://en.wikipedia.org/wiki/BitTorrent_(protocol)
[3] <u>See</u> http://en.wikipedia.org/wiki/Cryptographic_hash

error-free."  <u>See</u> FN 2.  "Cryptographic hash values are sometimes called (digital) fingerprints."

<u>See</u> FN 3.

Plaintiff's investigators use the hash value as a digital fingerprint that enables Plaintiff to

ensure that all of the infringements alleged in this suit arise from the exact same unique version

of Plaintiff's movie as evidenced by the cryptographic hash value.  Significantly, many of

Plaintiff's movies have been initially seeded several times.  Each seeding produces its own

independent swarm.   Here, Plaintiff has only sued Defendants in the exact same swarm.

## 5.   <u>The District of Columbia Correctly Supports Joinder In BitTorrent Cases</u>

The District of Columbia has issued by far and away the longest, most comprehensive,

decisions concerning the issues, including joinder, raised in BitTorrent litigation.  Eight cases

D.C. judges have adjudicated, which can be found on Westlaw, are as follows: (1) <u>Voltage</u>

<u>Pictures, LLC v. Vazquez,</u> 2011 WL 5006942 (D.D.C. 2011) (opining joinder is proper and that

Doe Defendants do not have standing to intervene in the discovery process prior to being named

as a defendant); (2) <u>NuImage, Inc. v. Does 1-22,322,</u> 2011 WL 3240562 (D.D.C. 2011) (10 page

opinion, permitting joinder but raising concerns about long-arm); <u>West Coast Productions, Inc. v.</u>

<u>Does 1-5829,</u> 275 F.R.D. 9 (D.D.C. 2011) (11 page opinion, permitting joinder, holding long

arm could be used, denying all motions to quash); <u>Call of the Wild v. Does 1-331,</u> 274 F.R.D.

334 (D.D.C. 2011) (permitting joinder, holding long arm could be used, denying all motions to

quash); <u>Maverick Entertainment Group, Inc. v. Does 1-2115,</u> 2011 WL 1807428 (D.D.C. 2011)

(18 page opinion, permitting joinder, holding long arm could be used, denying all motions to

quash); <u>Voltage Pictures, LLC v. Does 1-5000,</u> 79 Fed.R.Serv.3d 891 (D.D.C. 2011) (18 page

opinion permitting joinder, holding long arm could be used, denying all motions to quash);

<u>Donkeyball Movie, LLC v. Does 1-171,</u> 2011 WL 1807452 (D.D.C. 2011) (15 page opinion

permitting joinder, holding long arm could be used, denying all motions to quash); <u>Call of the Wild v. Does 1-1062,</u> 770 F.Supp.2d 332 (D.D.C. 2011) (36 page opinion addressing all of the issues raised in pre-Doe identification BitTorrent litigation.)  Significantly, the <u>Call of the Wild</u> Court denied all of the motions to quash, ruled in favor of copyright owners on the joinder issue, the free speech issue, the right to remain anonymous issue [Doe's who file motions do not have that right], allowed Plaintiff to use the long arm statute, and held that internet service providers cannot refuse to comply with subpoenas on the basis that it is unduly burdensome.

**6.      Joinder is Proper Because the Defendants' Infringement Was Part of a Series of Transactions**

In construing the Federal Rules of Civil Procedure, "it must only be shown that each act or transaction was part of a 'series of acts or transactions' and that each defendant participated in the series of transaction, joinder does not require the participation by all defendants in every act constituting each joined offense."  <u>United States v. Serubo</u>, 460 F. Supp. 689, 694 (E.D. Pa. 1978).

**i.      Here, Plaintiff Properly Pled a Series of Transactions**

Pursuant to Fed. R. Civ. P. 8, under the notice pleading standard, "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests."  <u>Erickson v. Pardus</u>, 551 U.S. 89, 93 (2007).  Additionally, "when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the Complaint."  <u>Id.</u> at 94.  Plaintiff's Complaint easily satisfies Rule 8's requirement to give Defendants notice that Plaintiff is asserting that Defendants acted together in the same transaction or through a series of transactions.  <u>See</u> Compl. ¶29, ¶30, ¶31, ¶33, ¶38, ¶39.

13

When deciding on this exact issue, the Middle District of Florida held:

> Each seeding produces its own independent swarm. Plaintiff limited the Defendants in this suit to those allegedly using the exact same swarm. Based on these allegations, the Plaintiff's claims against the Defendants are logically related. Each John Doe Defendant is a possible source for the Plaintiff's work, and may be responsible for distributing the movie to other John Doe Defendants, who are also using the same file-sharing protocol to copy the identical copyrighted material.

K-Beech Inc., v. John Does 1-57, Case 2:11-cv-00358-CEH-SPC,   at*12 (M.D. Fl. 2011).

While the logical relationship test does not require it, should this matter go to trial, Plaintiff will prove that the Defendants' infringement was committed through the same transaction or through a series of transactions with mathematical certainty by demonstrating, *inter alia,* that the algorithm used by BitTorrent Trackers would have caused the entire series of transactions to be different but for each of the Defendants' infringements.

### 7.    There Are Common Issues of Fact and Law

"Rule 20(a)(2)(B) requires the plaintiffs' claims against the putative defendants to contain a common question of law or fact." Call of the Wild, 770 F.Supp.2d at 343.  "The plaintiffs meet this requirement." Id.  "In each case, the plaintiff will have to establish against each putative defendant the same legal claims concerning the validity of the copyrights in the movies at issue and the infringement of the exclusive rights reserved to the plaintiffs as copyright holders." Id. The "factual issues related to how BitTorrent works and the methods used by plaintiffs to investigate, uncover and collect evidence about the infringing activity will be essentially identical for each putative defendant." Id.

**8.** **Joinder Promotes Judicial Efficiency and is Beneficial to Putative Defendant and Doe Defendants Cannot Demonstrate Prejudice At This Stage**

"The Court finds no prejudice to the Defendants at this stage in the litigation. In fact, the Court finds that joinder in a single case of the Defendants who allegedly infringed the same copyrighted material both promotes judicial efficiency and benefits the Defendants, who will be able to see the defenses, if any, raised by other John Does." K-Beech Inc., v. John Does 1-57, Case 2:11-cv-00358-CEH-SPC, at*12 (M.D. Fl. 2011).

"[T]he putative defendants are currently identified only by their IP addresses and are not named parties. Consequently, they are not required to respond to the plaintiffs' allegations or assert a defense. The defendants may be able to demonstrate prejudice [after being named], but they cannot. . . before that time." Call of the Wild v. Does 1-1062, 770 F.Supp.2d 332, 344 (D.D.C. 2011).

**9.** **Disallowing Joinder Would Effectively Prevent Plaintiff From Being Able to Enforce Its Copyrights and Would Be Inconsistent With Rule 1**

The Call of the Wild Court held that disallowing joinder would effectively prevent Plaintiff from being able to enforce its copyrights:

> The plaintiffs would be forced to file 5,583 separate lawsuits * * * Plaintiffs would additionally be forced to pay the Court separate filing fees in each of these cases, * * * This would certainly not be in the "interests of convenience and judicial economy," or "secure a just, speedy, and inexpensive determination of the action." Given the administrative burden of simply obtaining sufficient identifying information to properly name and serve alleged infringers, it is highly unlikely that the plaintiffs could protect their copyrights in a cost-effective manner.

Id. at 344-345.

**10.**    **District Courts From the Around the Country Permit Joinder**

     **i.**    **The District Court of Colorado Permits Joinder**

In every BitTorrent copyright infringement case before the court, the District Court of Colorado has ruled that joinder is proper and creates judicial efficiency.  See Patrick Collins, Inc. v. John Does 1-33, 2012 WL 415424 (D. Colo. 2012).

> [R]ather than result in needless delay, joinder of the Doe Defendants 'facilitates jurisdictional discovery and expedites the process of obtaining identifying information, which is prerequisite to reaching the merits of [Plaintiff's] claims .' *Voltage Pictures,* 2011 WL 1807438, at *7. Therefore, the Court concludes that joinder under Rule 20(a)(2) is proper at this juncture.

Id. at 3.

     **ii.**    **California District Courts Permit Joinder**

All three Districts in California which have adjudicated joinder in BitTorrent copyright infringement cases hold that joinder is proper.   In Camelot Distribution Group v. Does 1-1210, 2011 WL 4455249, *3 (E.D.Cal. 2011), the Court "conclude[d] that a decision regarding joinder would be more appropriately made after further development of the record."  See also, Berlin Media Art E.K. v. Does 1-144, 2011 WL 4056167 (E.D. CA. 2011) (permitting discovery in joined case.)  In Liberty Media Holdings, LLC v. Does 1-62, 2011 WL 1869923 (S.D.Cal.2011) the Court held "[a]fter careful consideration of the issue, . . . [i]n this case, the complaint sufficiently *alleges* that defendants are properly joined due to the use of BitTorrent, which necessarily requires each user to be an uploader as well as a downloader."

Chief Magistrate Judge Maria Elena-James sums up the decisions of the judges in the Northern District of California who have repeatedly held that joinder is proper.   See e.g. Patrick Collins v. Does 1-2590, 2011 WL 4407172 (N.D. Cal. 2011), noting that "[r]ecently, courts in

this District . . . have come to varying decisions about the proprietary of joining multiple defendants in BitTorrent infringement cases" and finding:

> This Court has carefully reviewed such decisions and notes that they are highly dependent on the information the plaintiff presented regarding the nature of the BitTorrent file-sharing protocol and the specificity of the allegations regarding the Doe defendants' alleged infringement of the protected work. Both of these factors guide the Court's joinder analysis . . . [in concluding joinder is proper].

See also, New Sensations, Inc. v. Does 1-1,474, 2011 WL 4407222, (N.D.Cal. 2011) (same.) Accord Hard Drive Productions, Inc. v. Does 1–46, 2011 U.S. Dist. LEXIS 67314 (N.D. Cal. 2011) (same); New Sensations, Inc. v. Does 1745, 2011 WL 2837610 (N.D. Cal. 2011) (same, and opining "Judge Howell of the D.C. Circuit has repeatedly held that in infringement actions" joinder is proper "[h]is analysis makes sense.")[4]

### iii.    The Northern District of Illinois Permits Joinder

Defendant relies on cases which cannot be found on Westlaw from Illinois using the search terms BitTorrent and joinder. There are only four decisions which come up using Westlaw and the terms "BitTorrent & joinder" in Illinois; they are Hard Drive v. Does 1-55, 2011 WL 4889094, (N.D.Ill 2011); First Time Videos, LLC v. Does 1-76  --- F.R.D. ----, 2011 WL 3586245 (N.D.Ill.,2011); First Time Videos, LLC v. Does 1-500, --- F.Supp.2d ----, 2011 WL 3498227 (N.D.Ill.,2011); MGCIP v. Does 1-316, 2011 WL 2292958 (N.D. Ill. 2011).   All four Illinois decisions held joinder is proper and distinguish previous Illinois decisions (which cannot be found on Westlaw) that do not so hold.

---

[4] See Pacific Century Intern v. Does 1-48, 2011 WL 4725243 (N.D. Cal. 2011) (a poorly reasoned opinion holding that if Plaintiff admits additional discovery is needed to proceed against the correct person then joinder is improper.) Cf Liberty Media Holdings, LLC v. Swarm of November 16, 2010, 2011 WL 1597495 (S. D. Cal. 2011) (holding a claim for negligently letting others to use your internet could withstand a motion to dismiss). Here, Plaintiff intends to pursue each Doe Defendant.

### iv.   New York Permits Joinder

Courts in New York have held that joinder is proper in BitTorrent copyright cases when as here all Doe Defendants' IP addresses were traced to this district and all of the Defendants in a given case participated in the same swarm of infringers as evidenced by a cryptographic hash value.   See DigiProtect USA Corp. v. Does, 2011 WL 4444666 (S.D.N.Y. 2011).   See also Digital Sin, Inc. v. Does 1-176, 12-CV-00126 AJN, 2012 WL 263491 (S.D.N.Y. Jan. 30, 2012).

Although not on Westlaw, in a complaint with very nearly verbatim identical allegations as the one before the Court now, New York held joinder was proper.   Patrick Collins v. John Does 1-9, 11-cv-01269 (S.D.N.Y. 2011) (Dkt. 10) stating: "Order denying Motion to Quash and to Sever.   Upon careful consideration, for the reasons stated in plaintiff's opposition, the motion is denied."

### v.   Maryland Federal Courts Permit Joinder

Maryland has issued at least four opinions stating that joinder is proper in similar BitTorrent actions.   See Patrick Collins Inc. v. Does 1-22, 2011 WL 5439005 (D. Md. 2011) (holding joinder is proper and may actually be beneficial to the defendants); Patrick Collins Inc. v. Does 1-11, 2011 WL 5439045 (D. Md. 2011) (holding joinder is proper and may actually be beneficial to the defendants);   K-Beech Inc. v. John Does 1-22, 2011 WL 60000768 (D. Md. 2011); (holding joinder is proper and may actually be beneficial to the defendants);   Third Degree Films v. Does 1-118, 2011 WL 6837774 (D. Md. 2011) (holding joinder is proper and may actually be beneficial to the defendants).

### vi.   New Jersey, North Carolina, and Florida Permit Joinder

Courts in New Jersey, North Carolina, and Florida have also permitted joinder in BitTorrent actions where, as here, all of the defendants were a part of the same swarm.   See K-

Beech v. John Does 1-39, et. al., 11-cv-04776 (D. NJ Jan.6, 2012); K-Beech, Inc. v. Does 1-29, 2011 WL 5966337 (W.D.N.C. Nov. 28, 2011); K-Beech Inc., v. John Does 1-57, Case 2:11-cv-00358-CEH-SPC, at*12 (M.D. Fl. 2011); AF Holdings, LLC v. Does 1-162, Case No. 11-23036, (S.D. Fl Feb. 14, 2012).

> **11.    Joinder is Also Proper Because Plaintiff Pled That Each of the Defendants Is Contributorily Liable For Each Other Defendant's Infringement**

Joinder is also proper because Plaintiff pled that each Defendant is contributorily liable for each of the other Defendant's infringement.  "It is, today, a given that 'one who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another, may be held liable as a 'contributory infringer.'"  Costar Group, Inc. v. Loopnet, Inc., 164 F. Supp.2d 688, 696 (M.D. 2001).  Here, Plaintiff properly pled contributory infringement.  See Compl. ¶¶ 54-59.

Significantly, Plaintiff will prove that there was one initial seeder that uploaded the subject torrent file identified by the unique hash value.  Plaintiff will further prove that when a Defendant receives a piece from a downstream infringer, i.e., an infringer who already had that piece, then that Defendant will automatically begin distributing the piece it received from the downstream infringer to others.  By doing so, Plaintiff will prove that said Defendant materially assists the downstream infringer's direct infringement of Plaintiff's exclusive right to "redistribute . . . the Work. . . ."  in violation of 17 U.S.C. § 106(3) and 17 U.S.C. §501. Similarly, when a Defendant provides a piece of Plaintiff's copyrighted work to an upstream infringer, Plaintiff will prove that the upstream infringer both sends that piece to other infringers and will also assemble the entire Work.  Accordingly, by delivering a piece to an upstream infringer, the Defendant is contributorily liable for materially assisting the upstream infringer to

redistribute, perform and display the Work in violation of 17 U.S.C. § 106(3)-(5) and 17 U.S.C. § 501.

### 12.    Contributory Infringement is a Jury Question

Since one of the grounds for permissive joinder is joint and several liability, should the Court hold that joinder is not permitted, then any such holding would effectively summarily adjudicate Plaintiff's claim for contributory infringement.  Such a holding would be erroneous because contributory infringement is "a question of fact for trial."  Adobe Systems, Inc. v. Canus Productions, Inc., 173 F. Supp.2d 1044, 1055 (C.D. Cal. 2001); Marobie-FL, Inc. v. National Ass'n of Fire Equipment Distributors, 983 F. Supp. 1167 (N.D. IL 1997) ("fact questions precluded summary judgment with respect to providers' liability for contributory infringement"). Moreover, since BitTorrent works through the cooperative exchange among peers in a swarm, claims for contributory infringement must be permitted or the law would be inconsistent with the very nature of BitTorrent.

### 13.    Plaintiff Intends to Call Several of the Defendants To Prove Contributory Infringement vis-à-vis the other Defendants

Regarding contributory infringement, by way of example, Plaintiff has to prove Doe 1 is liable for direct infringement in order for Plaintiff to succeed on its claim that Doe 2 is contributorily liable for Doe 1's infringement.  Indeed, "without proof of direct infringement there can be no liability for contributory infringement."  Bridgeport Music, inc. v. Diamond Time, Ltd., 371 F.3d 883 (6th Cir. 2004).  Accordingly, to support its claim of contributory infringement against each Defendant vis-a-vis each other Defendant, Plaintiff intends to call each of the Defendants to prove the direct infringement.  The realities associated with Plaintiff's

evidentiary burdens weighs in favor of having one trial, as opposed to multiple trials, so that the parties' resources are not squandered.

## III.    THIS COURT SHOULD NOT QUASH THE SUBPOENA

### A.    The Subpoena was Issued Properly and Defendant Lacks Standing

Pursuant to Fed. R. Civ. P. 45(a)(2)(c) "a subpoena for production of documents must issue from the court for the district where the production is to be made."  New Life Homecare, Inc. v. Blue Cross Ne. Pennsylvania, 3:06-CV-2485, 2012 WL 580198 (M.D. Pa. Feb. 22, 2012). "[W]hen the subpoena seeks testimony or materials from a witness beyond the territorial reach of the action-pending district …it must issue 'from' the district court of the district in which the deposition or production is sought."  Fed. R. Civ. P. 45 Practice Commentaries C45-4. Comcast's Legal Compliance Department for Internet Services is located in Morristown, NJ and Comcast requires that the subpoena be issued from its local court.  In order to comply with Comcast's request, Plaintiff issued the subpoena from the District Court of New Jersey.

Defendant's argument of where the subpoena is issued is a red herring.  Indeed, Defendant does not even have standing to assert that the subpoena was issued in violation of 45(a)(c)(2) because it is designed to protect the rights of the subpoenaed party.  This is just an attempt to divert attention from Plaintiff's copyright infringement claim.

### B.    An IP Address is the Only Way to Identify the Infringer

Plaintiff pled that the Defendant was the infringer.  This allegation was made in good faith and is logical because a subscriber of internet service is the most likely user of the internet service.  Defendant, citing one unpublished opinion from the Northern District of Illinois, attempts to establish that an IP address is not the equivalent of a person.  This does not change the fact that the IP address is the only way to identify the infringer.  Even if the Doe defendant is

not the actual infringer but merely the subscriber of internet service, the infringer was another person who was using the Doe defendant's internet service.  Almost always, this is a family member such as a husband, wife, son or daughter.  Copyright infringement is a tort and under black letter tort law parents are liable for their children's torts.  Ultimately, these assertions amounts to nothing more than a denial and Plaintiff should not be precluded from investigating the basis for the denial.  Moreover, Plaintiff can amend its complaint to plead negligence.  See Liberty Media Holdings, LLC v. Swarm of November 16, 2010, 2011 WL 1597495, *4 (S.D.Cal. 2011) (in the context of BitTorrent infringement, holding that a claim for negligence can survive a motion to dismiss).

Significantly, these arguments about liability and innocence are what trials are for and are not properly addressed in motions to quash.  Toward that end, at the proper point, if necessary, Plaintiff will examine Defendant's computers.  Plaintiff is confident one of Defendant's computers will have a BitTorrent Client or Defendant will have recently and conveniently thrown away a computer.  Again, this is what trials are for and at this stage it is sufficient that Plaintiff's complaint properly pled that Defendant is liable for direct and contributory infringement.  These allegations are reasonable because the subscriber is the most likely infringer.

At this stage of the litigation process, Plaintiff has no other option but to file suit against the owners of these IP addresses to obtain the infringers identity.  If this Court were to follow Defendant's rationale, Plaintiff would have no recourse against the mass copyright infringement it suffers on a daily basis.  Any such holding would be contrary to existing law and the express policy of Congress.  In 1999 Congress intentionally amended the Copyright Act to deter individuals from infringing copyrights on the internet by increasing the statutory remedies:

> Congress did contemplate that suits like this [against individuals] were within the Act. Congress last amended the Copyright Act in 1999 to increase the

minimum and maximum awards available under § 504(c). See Digital Theft Deterrence and Copyright Damages Improvement Act of 1999, Pub. L. No. 106-160, 113 Stat. 1774. At the time, Congress specifically acknowledged that consumer-based, noncommercial use of copyrighted materials constituted actionable copyright infringement. Congress found that "copyright piracy of intellectual property flourishes, assisted in large part by today's world of advanced technologies," and cautioned that 'the potential for this problem to worsen is great.

Sony v. Tennenbaum, 2011 WL 4133920 at *11 (1st Cir. 2011) (emphasis added).

### C.   The Doe Defendant's IP Addresses Were Undoubtedly Used to Distribute Plaintiff's Copyrighted Movie

The third party that Plaintiff retained to identify the IP addresses of the Doe Defendants is named IPP Limited. Plaintiff submitted a declaration from IPP in support of its motion for leave to serve a subpoena in advance of a Rule 26(f) conference. IPP's investigative server established a TCP/IP direct one-to-one connection with each of the Doe Defendants' computers. As part of this connection, the computers' "shook hands" and identified themselves by providing their IP addresses. Thereafter, each of the Doe Defendants sent IPP a piece of Plaintiff's copyrighted movie. "A direct and continuous connection between the IPTRACKER-server and the uploader of the file is established and exists at least 10 seconds before, during and at least 10 seconds after the capture sequence i.e. during the whole download process." (Dec. Tobias Feiser Ex. A. at *4.) The assertion that an IP address can be "spoofed" in such a way as to give a false positive is inconsistent with the fundamental rule governing the internet; viz. no two computers can be assigned the same IP address at the same time. If that was possible, the internet would crash. For one computer to send another computer information over the internet, the computers need to know their respective IP Addresses. IPP's representatives will be available during the discovery process to demonstrate and attest to this process.

Further, Plaintiff has taken additional safeguards for accuracy by verifying the content received from Defendant.  Plaintiff has a human "in the loop" to provide a manual check of the identifying material.   As Plaintiff's investigator, Tobias Fieser, attests, "I analyzed each BitTorrent 'piece' distributed by each IP address listed on Exhibit B and verified that reassembling the pieces using a specialized BitTorrent Client results in a fully playable digital motion picture." (Dec. Tobias Fieser at ¶ 21.)  Plaintiff is absolutely certain that Defendant's IP address downloaded, controlled, and distributed Plaintiff's copyrighted work to its investigative service.  Finally, Plaintiff knows that its technology is accurate because a substantial number of defendants admit their culpability.  Again this is just an improper attempt to divert attention from Defendant's liability for digital theft with ad hominem attacks instead of real legal or factual arguments.  Moreover, at best, it is a defense.

**IV.     THIS COURT SHOULD NOT ISSUE A PROTECTIVE ORDER**

Defendant should not be granted a protective order on the basis of this law suit.    The Third Circuit has held that in order to proceed anonymously, a party in the law suit must demonstrate a reasonable fear of severe harm.  See Doe v. Megless, 654 F.3d 404, 408 (3d Cir. 2011).

> While not expressly permitted under Federal Rule of Civil Procedure 10(a), in exceptional cases courts have allowed a party to proceed anonymously. That a plaintiff may suffer embarrassment or economic harm is not enough. Instead, a plaintiff must show 'both (1) a fear of severe harm, and (2) that the fear of severe harm is reasonable.'

Id. (emphasis added) (internal citations omitted).

"The potential embarrassment … of being associated with allegations of infringing hardcore pornography does not constitute an exceptional circumstance that would warrant allowing the defendants to proceed anonymously."   Liberty Media Holdings, LLC v. Swarm Sharing Hash

<u>File</u>, 2011 WL 5161453 (D. Mass. Oct. 31, 2011).  Here, Defendant is requesting a protective order so that he may avoid the embarrassment of being named in a law suit regarding pornography.  This embarrassment is not enough to warrant the issuing of a protective order.  Defendant has not demonstrated any indication that revealing his identity in this litigation would result in a reasonable fear of severe harm.

**V.**   **<u>CONCLUSION</u>**

For the foregoing reasons, Plaintiff respectfully requests that the Court deny the subject motion.

DATED this 22nd day of March, 2012

Respectfully submitted,

FIORE & BARBER, LLC

By:   <u>/s/ *Christopher P. Fiore*    </u>
Christopher P. Fiore, Esquire
Aman M. Barber, III, Esquire
Attorneys for Plaintiff
425 Main Street, Suite 200
Harleysville, PA 19438
Tel:  (215) 256-0205
Fax:  (215) 256-9205
Email:  cfiore@fiorebarber.com

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on March 22, 2012, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that service was perfected on all counsel of record and interested parties through this system.

By:  <u>/s/ *Christopher P. Fiore*    </u>